IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
May 14, 2025 Session

## DARENA L. DORSEY v. SCOTT DORSEY

**Appeal from the Circuit Court for Bradley County**
**No. V-22-493          Michael E. Jenne, Judge**

———————————————————

**No. E2024-00742-COA-R3-CV**

———————————————————

This case arises out of the demise of a 20-year marriage. The trial court declared the parties divorced, equitably divided the marital estate, and awarded the wife alimony *in solido*, transitional alimony, and alimony *in futuro*. The husband appeals. Finding no abuse of discretion, we affirm the trial court's decision in all respects.

**Tenn. R. App. P. 3 Appeal of Right; Judgment of the Circuit Court Affirmed; Case Remanded**

JOHN W. MCCLARTY, P.J., E.S., delivered the opinion of the court, in which THOMAS R. FRIERSON, II and KRISTI M. DAVIS, JJ., joined.

Philip M. Jacobs and Chandler I. McNabb, Cleveland, Tennessee, for the appellant, Scott Dorsey.

M. Randall Sellers, Cleveland, Tennessee, for the appellee, Darena  Dorsey.

**OPINION**

**I. BACKGROUND**

Plaintiff Darena L. Dorsey ("Wife") filed a complaint for divorce from Defendant Scott Dorsey ("Husband") on August 16, 2022. During the course of the divorce action, Wife obtained an order of protection against Husband based on violence directed toward Wife and the couple's two children. Subsequently, Husband was found to have violated the order and was charged with five counts of contempt. Husband received a suspended sentence. At the time of divorce, the couple had been married for more than 20 years.

The marital estate included three contiguous parcels of real property (244 Lamar Lawson Road, 260 Lamar Lawson Road, and 264 Lamar Lawson Road), all of which came from Wife and her family. Wife brought 244 Lamar Lawson Road, acquired in 1988, into the marriage. This was the marital home for the first five years of matrimony. When Husband decided to become a contractor and needed a line of credit, Wife put her home in both names to allow Husband to obtain additional credit. Husband purported to start renovation efforts on the house, but it is now gutted and uninhabitable.[1]

Lots 260 and 264 Lamar Lawson Road belonged to Wanda Payne, Wife's mother. Mrs. Payne testified that she signed "papers" putting her home on one of the lots into the names of Husband and Wife when she was seriously ill and in the hospital in 2016. According to Mrs. Payne, Husband was supposed to renovate her home and have the property appraised. Rather than completing the renovations, however, Husband told Mrs. Payne that she needed to move out of the house and into a camper. Mrs. Payne testified that Husband eventually demolished her home. She related that she was later ordered by Husband to vacate the camper because it was going to be too cold for her to live in it. At trial, upon Mrs. Payne being shown the deed of conveyance indicating consideration paid to her of $125,000, she observed that she never received any money. The record reveals that Husband built a work shop from a repurposed school pod on Wife's family property before being conveyed an interest in the land.

At the time of trial, Wife was 55 and in good health. She acknowledged attaining a high school diploma, attending Cleveland State for a period of time, and having a real estate license. The trial court determined that at the beginning of the marriage, Wife worked outside the home for four years at an advertising agency as the office manager. Once the couple's first child was born, Wife became a stay-at-home homemaker and did paperwork for Husband's business. She obtained the real estate license around 2016 in order to help Husband expand his company to flip houses. Around the date of separation in 2022, Wife began working at Exit Realty and makes approximately $18.00 an hour, yielding an income of $33,827 annually. Husband was 57 years old at the time of trial, in good health, had a high school diploma, and attended some college and welding school. Allowing for deductions, Husband's income was determined to be $44,472. The trial court observed that Husband currently makes around $10,000 more a year than Wife.

In the final divorce order, entered on April 23, 2024, the court granted Wife a divorce on the grounds of inappropriate marital conduct. The trial court noted "a very disturbing video" depicting a violent beating of one of the minor children with a belt and observed that Husband pled guilty on April 24, 2023, to domestic assault charges against the couple's other adult child who lived at home.[2] Testimony also was presented to

---

[1] Wife testified at trial that as a result of Husband's renovation plans, she had been living in a camper for 18 years.

[2] The court observed that Husband had hit older son multiple time, including in the face on August

establish Husband's inappropriate marital conduct with another woman. Husband was awarded 40% of the marital estate; Wife was awarded 60% based on an evaluation of the factors for distribution. Wife received all three lots of real property. The trial court gave Husband $177,657 in personal property and $6,000 in debt. His net estate was $219,157. Wife was awarded personal property of $64,787 and the three tracts of land totaling $444,800. Her estate minus the debt of $156,575[3] was $523,087, leaving a net estate of $319,012. The court awarded Husband an "equalizing payment" of $47,500 to be paid by Wife and noted that "the same will be reduced by attorney fees the court orders as alimony *in solido* awarded to Wife herein below." The trial court observed that Husband is leaving the marriage with very little debt, whereas Wife will have "a lot of debt but more assets." The court found it "very significant" that Wife and her mother contributed the real property in the marital estate.

As to spousal support, the trial court concluded that Wife was a disadvantaged spouse and that rehabilitation was not feasible. The court noted that Husband volunteered to pay Wife alimony in the amount of $1,000 per month, and that amount was so ordered. The trial court determined that Husband had the greater ability for future acquisitions of assets and income and to pay support, as he has higher income and is self-employed. Wife was awarded $1,200 per month in transitional alimony for nine months towards the line of credit, plus $362 additional support and child support of $638. Then, alimony *in futuro* of $362 per month plus child support until their minor child graduates in 2025, at which point in time the alimony would be $500 per month. Noting that Husband's statements were "perplexing," generally less credible, evasive and contradictory to prior testimony, the court found Wife's testimony more credible. As noted, Husband was found to be physically abusive to both Wife and their two children.[4]

Husband filed a timely notice of appeal.

## II. ISSUES

The issues raised by Husband are as follows:

1. Whether it was an abuse of discretion for the trial court when dividing the marital estate to (1) focus on the fact that two pieces of real property deemed marital property were gifted by Wife's mother to the parties and (2) reducing Husband's portion of the marital estate by Wife's alimony *in solido* award.

6, 2022.

[3] The debt includes Husband's line of credit that was rolled over into a note.

[4] The trial court observed that the minor child had been questioned at trial: "[T]his child that turns 17 years old became tearful and emotional and cried on the stand and testified he's never had a good relationship with his father." The judge observed: "I put in quotes, he has never been a good father to me so there is nothing to restore."

2. Whether it was an abuse of discretion for the trial court to award Wife alimony *in futuro* when Wife was employed, in good health, and could be rehabilitated.

3. Whether it was an abuse of discretion for the trial court to award Wife her attorney fees as alimony *in solido* when Wife was employed and had sufficient assets to pay her own attorney fees.

## III. STANDARD OF REVIEW

When dealing with the trial court's findings of fact, we review the record *de novo* with a presumption of correctness, and we must honor those findings unless there is evidence which preponderates to the contrary. Tenn. R. App. P. 13(d); *Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87, 91 (Tenn. 1993). Because trial courts are in a far better position than this court to observe the demeanor of the witnesses, the weight, faith, and credit to be given witnesses' testimony lies in the first instance with the trial court. *Roberts v. Roberts*, 827 S.W.2d 788, 795 (Tenn. Ct. App. 1991). Where issues of credibility and weight of testimony are involved, we will accord considerable deference to the trial court's factual findings. *In re M.L.P.*, 228 S.W.3d 139, 143 (Tenn. Ct. App. 2007) (citing *Seals v. England/Corsair Upholstery Mfg. Co.*, 984 S.W.2d 912, 915 (Tenn. 1999)). However, the trial court's conclusions of law are accorded no presumption of correctness. *Langschmidt v. Langschmidt*, 81 S.W.3d 741, 744-45 (Tenn. 2002).

Appellate courts reviewing a distribution of marital property "ordinarily defer to the trial judge's decision unless it is inconsistent with the factors in Tenn. Code Ann. § 36-4-121(c) or is not supported by a preponderance of the evidence." *Manis v. Manis*, 49 S.W.3d 295, 306 (Tenn. Ct. App. 2001).

The standard of review for all types of alimony is as follows:

Trial courts have broad discretion in determining the amount of alimony, if any, and the type of alimony to be awarded in view of the circumstances of each particular case, and such awards will not be disturbed absent an abuse of that discretion. *See Broadbent v. Broadbent*, 211 S.W.3d 216, 220 (Tenn. 2006); *Lindsey v. Lindsey*, 976 S.W.2d 175, 180 (Tenn. Ct. App. 1997). Thus, an appellate court reviews an award of alimony pursuant to the abuse of discretion standard. *Broadbent*, 211 S.W.3d at 220. More specifically, '[t]he role of an appellate court in reviewing an award of spousal support is to determine whether the trial court applied the correct legal standard and reached a decision that is not clearly unreasonable." *Id.* An abuse of discretion occurs when the trial court causes an injustice by: (1) applying an

incorrect legal standard, (2) reaching an illogical result, (3) resolving the case on a clearly erroneous assessment of the evidence, or (4) relying on reasoning that causes an injustice. *Gonsewski v. Gonsewski*, 350 S.W.3d 99, 105 (Tenn. 2011). [W]hen reviewing a discretionary decision by the trial court, such as an alimony determination, the appellate court should presume that the decision is correct and should review the evidence in the light most favorable to the decision." *Id.* at 105-06.

*Tittle v. Tittle*, No. M2022-01299-COA-R3-CV, 2024 WL 314102, at *8 (Tenn. Ct. App. Jan. 29, 2024). "Appellate courts are generally disinclined to second-guess a trial judge's spousal support decision." *Kinard v. Kinard*, 986 S.W.2d 220, 234 (Tenn. Ct. App. 1998).

## IV. DISCUSSION

### 1.

Husband refutes the division of the marital estate by the trial court. We give great weight to the decisions of the trial court in dividing marital assets and "we are disinclined to disturb the trial court's decision unless the distribution lacks proper evidentiary support or results in some error of law or misapplication of statutory requirements and procedures." *Herrera v. Herrera*, 944 S.W.2d 379, 389 (Tenn. Ct. App. 1996). Tennessee courts have frequently recognized that "an equitable division of the marital property need not be an equal division of the property." *Luplow v. Luplow*, 450 S.W.3d 105, 109-10 (Tenn. Ct. App. 2014). "The division of assets is not a mechanical process and trial courts are afforded considerable discretion." *Keyt v. Keyt*, 244 S.W.3d 321, 328 (Tenn. 2007) (citing *Manis*, 49 S.W.3d at 306).

In making equitable division of marital property, trial courts are charged with considering all relevant factors including those set forth in Tennessee Code Annotated section 36-4-121(c). The trial court retains the discretion to equitably divide the marital property "in proportions as the court deems just." Tenn. Code Ann. § 36-4-121(a)(1).

The factors stated in Tennessee Code Annotated section 36-4-121(c) are as follows:

(1) The duration of the marriage;

(2) The age, physical and mental health, vocational skills, employability, earning capacity, estate, financial liabilities and financial needs of each of the parties;

(3) The tangible or intangible contribution by one (1) party to the education, training or increased earning power of the other party;

(4) The relative ability of each party for future acquisitions of capital assets and income;

(5) (A) The contribution of each party to the acquisition, preservation, appreciation, depreciation or dissipation of the marital or separate property, including the contribution of a party to the marriage as homemaker, wage earner or parent, with the contribution of a party as homemaker or wage earner to be given the same weight if each party fulfilled its role;
(B) For purposes of this subdivision (c)(5), dissipation of assets means wasteful expenditures which reduce the marital property available for equitable distributions and which are made for a purpose contrary to the marriage either before or after a complaint for divorce or legal separation has been filed;

(6) The value of the separate property of each party;

(7) The estate of each party at the time of the marriage;

(8) The economic circumstances of each party at the time the division of property is to become effective;

(9) The tax consequences to each party, costs associated with the reasonably foreseeable sale of the asset, and other reasonably foreseeable expenses associated with the asset;

(10) In determining the value of an interest in a closely held business or similar asset, all relevant evidence, including valuation methods typically used with regard to such assets without regard to whether the sale of the asset is reasonably foreseeable. Depending on the characteristics of the asset, such considerations could include, but would not be limited to, a lack of marketability discount, a discount for lack of control, and a control premium, if any should be relevant and supported by the evidence;

(11) The amount of social security benefits available to each spouse;

(12) Such other factors as are necessary to consider the equities between the parties; and

(13) The total amount of attorney fees and expenses paid by each party in connection with the proceedings; whether the attorney fees and expenses were paid from marital property, separate property, or funds borrowed by a

party; and the reasonableness, under the factors set forth in Rule 1.5 of the Tennessee Rules of Professional Conduct, and necessity of the attorney fees and expenses paid by each party[.]

The trial court's division is entitled to great weight on appeal and should not be overturned unless it "lacks proper evidentiary support or results in some error of law or misapplication of statutory requirements and procedures." *Keyt*, 244 S.W.3d at 327 (quoting *Herrera*, 944 S.W.2d at 389).

Husband asserts that the trial court improperly considered the sentimental attachment Wife may have toward the property gifted the marital estate by her mother. He argues that once a piece of property is considered marital property, the fact that the property was gifted by one spouse's parent should not be relevant in the division of the marital estate.

We find no evidence in the record that the court incorrectly considered Wife's attachment to the real estate; rather, the trial court properly observed that Wife brought one parcel into the marriage while the other two parcels were gifted from her family, thus significantly contributing to the assets of the marital estate. Further, the court appropriately noted Wife had greater separate property at the time of the marriage, including a home with an $8,000 mortgage, while Husband brought only his welding equipment to the marriage.

As for the factors involved in making an equitable distribution, the court found that Husband had a higher annual income, so he was more likely to be able to acquire additional assets. The court properly observed the fact that although Husband was receiving less property, he would leave the marriage with little debt, and Wife will have considerable debt. Additionally, the trial court noted that both structures Husband had started renovating on 264 and 244 Lamar Lawson Road are now uninhabitable.

A review of the record reveals that the trial court specifically addressed all statutory factors that every court must consider in making a division of the marital estate. Our consideration of this case confirms that the trial court's determinations are not inconsistent with the statutory factors pertaining to the division of property, nor do they lack proper evidentiary support. Under the facts of this case, we find the trial court's discretion in determining this division to be fair and equitable under the pertinent statutory factors.

## 2.

Husband contests the award of alimony *in futuro* to Wife. He notes that there is a statutory bias against alimony *in futuro*:

The statutory framework for spousal support reflects a legislative preference

favoring short-term spousal support over long-term spousal support, with the aim being to rehabilitate a spouse who is economically disadvantaged relative to the other spouse and achieve self-sufficiency where possible. *See* Tenn. Code Ann. § 36-5-121(d)(2)-(3); . . .

*Gonsewski*, 350 S.W.3d at 109 (citations omitted). Under Tennessee law, alimony *in futuro* is appropriate when:

the disadvantaged spouse is unable to achieve, with reasonable effort, an earning capacity that will permit the spouse's standard of living after the divorce to be reasonably comparable to the standard of living enjoyed during the marriage, or to the post-divorce standard of living expected to be available to the other spouse, considering the relevant statutory factors and the equities between the parties.

Tenn. Code Ann. § 36-5-121(f)(1).

Tennessee Code Annotated section 36-5-121(i) governs the award of alimony. It provides in pertinent part that a court must consider "all relevant factors, including:

(1) The relative earning capacity, obligations, needs, and financial resources of each party, including income from pension, profit sharing or retirement plans and all other sources;

(2) The relative education and training of each party, the ability and opportunity of each party to secure such education and training, and the necessity of a party to secure further education and training to improve such party's earnings capacity to a reasonable level;

(3) The duration of the marriage;

(4) The age and mental condition of each party;

(5) The physical condition of each party, including, but not limited to, physical disability or incapacity due to chronic debilitating disease;

(6) The extent to which it would be undesirable for a party to seek employment outside the home, because such party will be custodian of a minor child of the marriage;

(7) The separate assets of each party, both real and personal, tangible and intangible;

(8) The provisions made with regard to the marital property, as defined in §
36-4-121;

(9) The standard of living of the parties established during the marriage;

(10) The extent to which each party has made such tangible and intangible
contributions to the marriage as monetary and homemaker contributions, and
tangible and intangible contributions by a party to the education, training or
increased earning power of the other party;

(11) The relative fault of the parties, in cases where the court, in its discretion,
deems it appropriate to do so; and

(12) Such other factors, including the tax consequences to each party, as are
necessary to con sider the equities between the parties.

"Although each of these factors must be considered when relevant to the parties'
circumstances, 'the two that are considered the most important are the disadvantaged
spouse's need and the obligor spouse's ability to pay.'" *Gonsewski*, 350 S.W.3d at 110
(quoting *Riggs v. Riggs*, 250 S.W.3d 453, 457 (Tenn. Ct. App. 2007)).

Concerning factor 10, the trial court found that "Wife and her family have made
significant contributions to the marriage insofar as putting Husband on the deed to the
property at 244 Lamar Lawson Road and then Wife's mother deeding the property to them
for the other two tracts of land." Concerning factor 11, the court noted that Husband was
at fault for the breakdown of the marriage.[5] The trial court found that Wife was an
economically disadvantaged spouse and that rehabilitation "is not possible." The trial court
ordered Husband to pay for nine months

as transitional alimony the amount of $1,200.00 per month towards the line
of credit note associated with the real properties herein above. In addition
thereto, and for the same nine (9) months, Husband shall pay direct to Wife
the amount of $362.00 per month as additional transitional alimony and child
support in the amount of $638.00 per month.

Regarding alimony *in futuro*, the trial court held as follows:

After the expiration of nine (9) months of transitional alimony, Husband shall
pay to wife as alimony *in futuro* the amount of $362.00 per month as
Husband is also paying child support in the amount of $638.00 per month
until the minor child graduates in 2025. After the child graduates high school,

---

[5] The court found that Husband was abusive to Wife and the children throughout the marriage.

Husband shall pay to Wife as alimony *in futuro* the amount of $500.00 per month.

Husband contends that Wife is in good health, employed, and could be rehabilitated. He argues that the court did not make specific factual findings as to why Wife was not capable of being rehabilitated. Husband asserts that both spouses worked throughout the marriage.

The record reveals that Wife left employment and became a stay-at-home mother for most of the marriage. It appears she may have assisted Husband with paperwork associated with his employment, but she was not gainfully employed during most of the marriage, working only four years of a 20-year marriage. Her efforts clearly contributed to the marriage and she obtained her real estate license in an attempt to help Husband find property so that he could flip houses. Shortly before the couple separated, Wife became employed as an administrative assistant, a position she desires to maintain in order to care for her minor son. She opined that her real estate license is insufficient to provide steady work and reliable income for herself and her child.

 "A concurrent award of alimony *in futuro* and rehabilitative alimony, such as that made in this case, is appropriate when 'a spouse may be only partially rehabilitated.'" *Andrews v. Andrews*, 344 S.W.3d 321, 344 (Tenn. Ct. App. 2010) (citing Tenn. Code Ann. § 36 5-121(d)(4)); *Norman v. Norman*, No. M2015-02364-COA-R3-CV, 2617 WL 3705121, at *8-9 (Tenn. Ct. App. Aug. 28, 2017) (rehabilitative alimony and alimony *in futuro* are appropriate when spouse can be only partially rehabilitated).

Our review of the record does not reveal evidence to support a finding that Wife can be rehabilitated to an appropriate level relative to Husband, who enjoys greater economic potential. We find that the evidence supports the trial court's finding that Wife is unable to achieve an earning capacity comparable to Husband. *Andrews*, 344 S.W.3d at 344. Thus, upon considering the relevant statutory factors and the record, we conclude that the trial court's ruling as to alimony should be affirmed. The factual findings underpinning the trial court's analysis are supported by the record. Husband produced no contrary evidence. Consequently, the court had adequate evidence upon which to find that Wife was not capable of supporting herself without rehabilitative and *in futuro* alimony. Viewing the decision in the light most favorable to the trial court, we find that the court did not abuse its discretion.

## 3.

Husband contests the award of alimony *in solido* to Wife. He argues that Wife has adequate property and income to pay her own attorney fees. Our Supreme Court has observed as follows:

It is well-settled that an award of attorney's fees in a divorce case constitutes alimony *in solido*. *See* Tenn. Code Ann. § 36-5-121(h)(1) ("alimony *in solido* may include attorney fees, where appropriate"); *Herrera v. Herrera*, 944 S.W.2d 379, 390 (Tenn. Ct. App. 1996). . . . As with any alimony award, in deciding whether to award attorney's fees as alimony *in solido*, the trial court should consider the factors enumerated in Tennessee Code Annotated section 36-5-121(i). A spouse with adequate property and income is not entitled to an award of alimony to pay attorney's fees and expenses. *Umstot v. Umstot*, 968 S.W.2d 819, 824 (Tenn. Ct. App. 1997). Such awards are appropriate only when the spouse seeking them lacks sufficient funds to pay his or her own legal expenses, *see Houshland v. Houshland*, 844 S.W.2d 619, 623 (Tenn. Ct. App. 1992), or the spouse would be required to deplete his or her resources in order to pay them, *see Harwell v. Harwell*, 612 S.W.2d 182, 185 (Tenn. Ct. App. 1980). Thus, where the spouse seeking such an award has demonstrated that he or she is financially unable to procure counsel, and where the other spouse has the ability to pay, the court may properly grant an award of attorney's fees as alimony. *See id.* at 185.

*Gonsewski*, 350 S.W.3d at 113.

After the entry of the final divorce, the trial court held a supplemental hearing for the purposes of determining the amount of attorney fees due Wife. The court included the previous award of $750 due Wife from the contempt hearings, and credited Husband for a previous payment of $3,000. The net attorney fees award in the form of alimony *in solido* was $14,782, which is to be deducted from Wife's equalizing payment of $47,500. Wife must still tender more than $32,000 to Husband to equalize the property distribution.

The trial court is given broad discretion to consider the factors enumerated in Tennessee Code Annotated section 36-5-121(i). This was done by the court which found that Wife was economically disadvantaged and that the Husband earned approximately $1,000 per month more than his now former spouse. Although Wife was awarded the real property, she was also awarded the considerable debt incurred during the marriage for the purpose of Husband's business efforts; the court expressed concern that Wife may be unable to meet all her obligations. This is not a case in which the economically disadvantaged spouse had considerable assets to pay her attorney fees. Under the circumstances of this case, an award of alimony *in solido* for the purpose of paying Wife's attorney fee is clearly appropriate. *Owens v. Owens*, 241 S.W.3d 478, 484 (Tenn. Ct. App. 2007) (award of attorney fees to economically disadvantaged spouses is appropriate). The trial court did not abuse its discretion in awarding Wife attorney fees in the form of alimony *in solido*.

- 11 -

## V. CONCLUSION

For the foregoing reasons, we affirm the trial court's judgment. This case is remanded for further proceedings consistent with this opinion. Costs on appeal are assessed to the appellant, Scott Dorsey.


<u>s/John W. McClarty</u>
**JOHN W. MCCLARTY, JUDGE**